# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6917 | **DATE** | 6/18/2001 |
| **CASE TITLE** | Neal Deleo vs. Benjamin Swirsky | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: Motions to dismiss [22-1] is granted in part and denied in part. Beswir and Joel Swirsky Foundation are dismissed from this lawsuit. Plaintiffs' motion for preliminary injunction [16-1] is denied and defendants motion to stay this proceeding is [22-2] denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 19 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 30 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 JUN 18 PM 3:35 | date mailed notice |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NEAL DELEO, as Representative of the Shareholders of Easy Access International, Inc., and individually, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 00 C 6917<br>) |
| v. | ) Judge Wayne R. Andersen<br>) |
| BENJAMIN SWIRSKY, Beswir Properties, Inc., The Joel Swirsky Foundation, and Zconnexx Corporation, | )<br>)<br>) |
| Defendants. | )<br>) |

DOCKETED
JUN 19 2001

## MEMORANDUM, OPINION AND ORDER

Neal DeLeo ("DeLeo") has filed a six count Complaint in his individual capacity and on behalf of shareholders of Easy Access International, Inc. ("EAI"), a dissolved Florida corporation. DeLeo alleges that the Defendants violated the fiduciary duty owed to shareholders of EAI by misappropriating EAI's assets. DeLeo further alleges that the Defendants concealed their actions and acted fraudulently and in violation of both the Florida Business Corporation Act and the Securities Exchange Act of 1934. The Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), 12(b)(7), and 19. Alternatively, Defendants move to stay this action pending a determination of a lawsuit filed in Canada, which has its basis in a similar set of facts and involves some of the same parties. DeLeo moves to enjoin the Defendants from proceeding on their Canadian action in favor of the one presently before us. We will analyze all pending motions in this opinion.



## BACKGROUND

This action derives from an allegedly fraudulent transaction of securities between EAI and Defendants Benjamin Swirsky ("Swirsky") and Beswir Properties, Inc. ("Beswir"). Plaintiff alleges that Swirsky controlled the Beswir entity through serving as its director while, at the same time, serving as Chairman of the Board of EAI. The transaction at the center of this controversy is a February 1, 1999 pledge ("Pledge") of the entire stock of Zconnexx ("ZCanada"), a wholly-owned subsidiary of EAI. DeLeo alleges that EAI pledged all of its issued and outstanding shares of Common Stock of ZCanada to Beswir without consideration. DeLeo alleges that the transfer was a sham perpetrated by the entire Board of Directors of EAI, under Swirsky's control, upon EAI's shareholders. As a result, EAI lost all of its ownership interest in ZCanada. In opposition to these allegations, the defendants maintain that the transfer of shares was made in exchange for a loan from Beswir to EAI, and that the transfer was proper and lawful.

In addition to the allegedly fraudulent transfer, DeLeo maintains that Swirsky intentionally concealed all dealings between Beswir and EAI from EAI's independent shareholders. The ZCanada shares were distributed among members of ZCanada's Board of Directors, as well as other parties associated with Swirsky, including the Joel Swirsky Foundation ("Foundation"), an entity controlled by Swirsky, at a factor of 1,000 times less than the value of the shares at incorporation. All of the activity, beginning with the pledge of ZCanada's shares, through their distribution, was allegedly done without notification of or approval by EAI's shareholders. EAI was involuntarily dissolved by the State of Florida on September 22, 2000.

2

On October 29, 2000, DeLeo made demand upon EAI's Board of Directors, as required by law for derivative actions, with a response required by November 3, 2000. The Board did not respond. Instead, ZCanada, Beswir, and Swirsky filed a declaratory judgment lawsuit in Toronto, Canada on November 2, 2000. ZCanada, Beswir and Swirsky are seeking a declaration that the "Pledge" was a legal and proper transaction.

## DISCUSSION

I. <u>Motion To Dismiss</u>

In deciding a motion to dismiss, the court should accept all allegations as true. <u>Kamilewicz v. Bank of Boston Corp.</u>, 92 F.3d 506, 509 (7th Cir. 1996). Further, courts must read those allegations in the light most favorable to the plaintiff. <u>Gomez v. Illinois State Bd. Of Educ.</u>, 811 F.2d 1030, 1039 (7th Cir. 1987). In addition, "any conflict in affidavits must be resolved in favor of the plaintiff." <u>Northwestern Corp. v. Gabriel Manufacturing Co., Inc.</u>, 1996 WL 73622 at *2 (N.D.Ill.). We shall, therefore, assume all incidents to have occurred as set forth in DeLeo's Complaint and all relevant pleadings.

A. <u>Personal Jurisdiction</u>

Defendants claim that DeLeo alleged insufficient facts to meet the standards necessary to confer personal jurisdiction upon this court. They ask that the suit be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In his response, DeLeo maintains that he has enough proof to meet both the minimum contacts test as well as satisfy the Illinois long-arm statute, codified under 735 ILCS 5/2-209.

In order for a court to have personal jurisdiction over a foreign defendant, "(1) the exercise of jurisdiction must accord with due process, and (2) the defendant must be amenable to

3

service of process." First Financial Resources v. First Financial Resources, Corp., 2000 WL 169373 at *2 (N.D.Ill.) (citing United States v. Martinez De Ortiz, 910 F.2d 376, 381 (7th Cir. 1990).) "The plaintiff must first establish the existence of jurisdiction under Illinois law and then show that the exercise of jurisdiction over the defendant will not offend due process." Northwestern Corp. v. Gabriel Manufacturing Co., Inc., at *2. (citing Jacobs/Kahan & Co. v. Marsh, 740 F.2d 587, 589 (7th Cir. 1984); Harold M. Pitman Co. v. Typecraft Software Ltd., 626 F.Supp. 305, 308 (N.D.Ill. 1986).)

Under the Illinois long-arm statute, 735 ILCS 5/2-209, this court can have personal jurisdiction over a foreign defendant if the defendant engaged in any of the factors enumerated therein. Section 2-209 states in pertinent part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
> (1) The transaction of any business within this State;
> ...
> (3) The ownership, use, or possession of any real estate situated in this State;
> ...
> (7) The making or performance of any contract or promise substantially connected with this State;
> ...
> (10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired;
> (11) The breach of any fiduciary duty within this State;
> ...
>
> (b) A court may exercise jurisdiction in any action arising within or without this State against any person who:
> ...
> (4) Is a natural person or corporation doing business within this State.

735 ILCS 5/2-209.

The court in Northwestern Corporation stated that a corporation is 'doing business' in Illinois "if it engages in regular activities in Illinois, not occasionally or casually, but with 'a fair measure of permanence and continuity.'" Northwestern Corp., at *2 (citing Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc., 15 F.3d 721, 724 (7th Cir. 1994); Cook Associates, Inc. v. Lexington United Corp., 87 Ill.2d 190, 429 N.E.2d 847 (Ill. 1981).)

The second part of the personal jurisdiction review is the constitutional due process. This analysis requires that the defendant have sufficient minimum contacts with the forum state "to comport with 'traditional notions of fair play and substantial justice.'" Northwestern Corp., at *3 (citing International Shoe Co. v. State of Washington, Office of Unemployment Compensation and placement, 326 U.S. 310 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).) To determine whether a defendant has sufficient minimum contacts, a court can look at: (1) whether the defendant is domiciled in the state where the suit is brought (Milliken v. Meyer, 311 U.S. 457 (1940)); (2) whether an individual defendant was served with process within the forum state (Burnham v. Superior Court, 495 U.S. 604 (1990)); (3) whether the defendant engaged in continuous, substantial economic activity within the forum state (Helicopteros Nacionales v. Hall, 466 U.S. 408, 414 (1984)); or (4) whether the defendant engaged in limited activity within the state, which gave rise to the claim in question (International Shoe, 326 U.S. at 318-20). Furthermore, the defendant must "purposefully avail himself of the privilege of conducting activities in the forum state such that he invokes the benefits and protections of the law." Northwestern Corp., at *3.

1. <u>Swirsky</u>

To begin with an analysis of the Illinois long-arm statute, Swirsky must meet at least one of the factors under section 2-209 in order for the court to have personal jurisdiction. Based on facts contained in DeLeo's Complaint and subsequent pleadings, Swirsky: transacts business in Illinois, section (a)(1), owns or uses real estate in Illinois, section (a)(3), made or performed a contract substantially connected with Illinois, section (a)(7), breached a fiduciary duty in Illinois, section (a)(11), and does business in Illinois, section(b)(4). As Director of EAI, Swirsky conducted business in Illinois by offering EAI shares for sale to Illinois residents. He owned real estate in Illinois as Vice Chairman or director of various corporations with extensive Illinois real estate activities. Through EAI, Swirsky was involved in contractual relationships with EAI's Illinois shareholders by virtue of their agreement to purchase EAI stock.

Swirsky's alleged breach of fiduciary duty extended to EAI's Illinois shareholders, connecting him with the forum state. The Illinois long-arm statute includes an agency clause under Section 2-209(a): "Any person ... who in person or through an agent does any of the acts hereinafter enumerated...." As a member of the board of directors for EAI, Swirsky served as its agent. Because EAI transacted business in Illinois and Swirsky as its director "knew of should have known" of such activities, <u>Ex rel. Morse v. E & B Coal Co.</u>, 261 Ill.App.3d 738, 747, 634 N.E.2d 436, 443, 199 Ill.Dec. 597, 604 (1994), he "subjected himself to the jurisdiction of Illinois courts under the long-arm statute." <u>Id.</u>

Under Illinois law, the fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." <u>Rice v. Nova Biomedical Corp.</u>, 38 F.3d 909, 912 (7th

6

Cir. 1994). However, this doctrine extends to parties so removed from the principal entity that to extend personal jurisdiction over them would be unfair and unreasonable. Thus, as stated in Rice, the fiduciary shield protects mere employees of a corporation, which otherwise would be subject to Illinois jurisdiction. See also Rollins v. Ellwood, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990). The fiduciary duty shield doctrine shows that we should exercise jurisdiction over Swirsky. Swirsky is not merely an employee of EAI, but rather is its director and controlling party. As an officer of a corporation, then, Swirsky is subject to personal jurisdiction in Illinois. Ideal Stencil Mach. & Tape Co. v. Merchiori, 600 F.Supp. 185 (S.D.Ill. 1985).

Finally, as a corporate officer of EAI, Swirsky conducted regular and continuous business dealings with EAI's Illinois shareholders, thus meeting the requirement of 2-209(b)(4). For the above reasons, Swirsky satisfies the Illinois long-arm statute portion of the personal jurisdiction analysis.

Swirsky must also satisfy the minimum contact test in order for this court to have jurisdiction over his person. We believe that Swirsky does meet the continuous and substantial activity prong of the test by virtue of the buying and selling of EAI's shares in Illinois. Furthermore, by allowing for such purchases and sales, Swirsky purposefully availed himself of the laws of Illinois and should have known that, by virtue of conducting business with Illinois residents, he could, at any time, be sued in Illinois. For the above reasons, we hold that this court has personal jurisdiction over defendant Swirsky.

2. <u>ZCanada</u>

In an almost identical analysis, we find that this court has personal jurisdiction over defendant ZCanada. First, under the section 2-209 analysis, the defendant meets the requirements of subsections (a)(1), (7), (11), and (b)(4). Through its active solicitation of Illinois subscribers for its internet-based services and operations, ZCanada engaged in business transactions in Illinois. Furthermore, it contracted with Illinois residents as a result of those business dealings. Taking DeLeo's allegations as true, ZCanada's breach of fiduciary duty to it's Illinois customers falls under section 2-209(a)(11). Therefore, ZCanada meets the (b)(4) regular and constant activity requirement of the long-arm statute.

Under the minimum contact test, the same regular and constant activity analysis fulfills the <u>Helicopteros</u> requirement. <u>Helicopteros</u>, 466 U.S. 408. Finally, ZCanada availed itself of the protection of Illinois laws in the course conducting internet solicitations. While the issue of personal jurisdiction based on contacts through the world-wide web is still contentious, we agree with the factors set forth by the court in <u>First Financial</u>, supra, to aid in this analysis. The <u>First Financial</u> court determined that mere existence of a website, for purely informative purposes, is not enough to confer personal jurisdiction. <u>First Financial</u>, at *3. Instead, personal jurisdiction exists if residents of the forum state can use the website to gather information, contact the foreign entity, place orders or requests, or enter into contracts. <u>Id</u>. In the case at hand, DeLeo alleges that ZCanada "actively solicited" business from Illinois subscribers and did not merely provide information without doing more. (Complaint ¶ 5)

Therefore, this court has personal jurisdiction over defendant ZCanada, the defendant having met both the state and constitutional requirements for connection to the forum state.

### 3. Beswir and Foundation

As discussed in section I(A)(1) above, the Illinois long arm statute for agency jurisdiction is codified under Section 2-209(a). Because we already concluded that this court has personal jurisdiction over Swirsky, his role as agent of both Beswir and the Foundation would impart personal jurisdiction upon the remaining two defendants. However, an entity must still maintain minimum contacts with the forum state to satisfy the constitutional requirements. Northern Trust Co. v. Randolph C. Dillon, Inc., 558 F.Supp 1118 (N.D.Ill. 1983). We feel that defendants Beswir and Foundation have shown an insufficient connection to Illinois to impart personal jurisdiction upon this court. Furthermore, DeLeo's allegations that Beswir and the Foundation have breached their fiduciary duty to EAI, thus meeting the section 2-209(a)(11) requirement for personal jurisdiction, are insufficient. DeLeo has shown no duty stemming from Beswir and the Foundation to EAI, nor has he shown any other connections between the two remaining defendants and Illinois. Thus, not having met the constitutionally required minimum contact standard, we conclude that this court does not have personal jurisdiction over defendants Beswir and Foundation and dismiss them as defendants.

### B. Failure to State a Claim

Since, as we concluded above, this court has jurisdiction only over Swirsky and ZCanada, henceforth we limit our discussion to those two defendants. The defendants attack DeLeo's Complaint under Rule 12(b)(6) both on the federal claim, with respect to the Securities Act of 1934, and the state claim, with respect to the common law breach of fiduciary duty.

1.   Securities Act of 1934

Defendants maintain that DeLeo uses breach of duty as the omission necessary under Section 10(b) and Rule 10b-5 of the Securities Act of 1934. Relying on Santa Fe Industries v. Green, 430 U.S. 462, 51 L. Ed. 2d 480, 97 S.Ct. 1292 (1977), they contend that, in order to invoke the statute, the omission or non-disclosure must be an act other than breach of duty. However, DeLeo claims that it is not the breach, but rather the failure of EAI's Board of Directors to disclose their impending transaction and, later, foreclosure upon ZCanada's stock that is at the heart of the 10b-5 claim.

A violation of Section 10(b) and Rule 10b-5 occurs if "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). Defendants maintain that the material fact in question cannot be the common law claim of breach of fiduciary duty, but rather a separate incident. While we agree with the defendants that plaintiff cannot bootstrap a claim of fiduciary breach into a securities claim by alleging nondisclosure of breach, we disagree that DeLeo has done so in his complaint.

A plaintiff may bring a cause of action under both state law and Section 10(b). "That state causes of action are also available to the plaintiff does not mean that a right of action will not lie under § 10(b) ... 'Since there was a sale of a security and fraud was used in connection with it, there is redress under § 10(b), whatever might be available as remedy under state law.'"

Estate of Soler v. Rodriguez, 63 F.3d 45, 55 (1st Cir. 1995). (citing Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6 (1977).)

In the instant case, irrespective of any state claim for breach of fiduciary duty, DeLeo alleges a breach of Section 10(b) based on nondisclosure of the transaction of ZCanada shares. What DeLeo set forth in his complaint as the omission allegedly perpetrated by the defendants was the failure to disclose the "Pledge" of ZCanada shares to Beswir. Such a transaction could have been material to shareholders of EAI. Furthermore, defendants could also have been aware of the impact of such a transaction and the failure to disclose it to EAI's shareholders. The fact that the transaction occurred in connection with the purchase or sale of securities is undisputed. Finally, it is DeLeo's burden to prove that he indeed relied on this omission and that the omission was the proximate cause of his and EAI's damages. Not all of the allegations need be proven at this stage. We believe that DeLeo sufficiently set forth facts which properly show a possible Section 10(b) violation.

Because DeLeo adequately asserted his Section 10(b) and Rule 10b-5 claims for misrepresentation or non-disclosure, we next need to assess whether they apply to the two remaining defendants, Swirsky and ZCanada.

        a.    <u>Swirsky</u>

DeLeo argues that when a control person engages in a securities transaction in which he has a conflict of interest, he "has the obligation to disclose to the other stockholders information in [his] possession which reflects on the fairness of the transaction." Bailey v. Meister Brau, Inc., 535 F.2d 982, 933 (7th Cir. 1976). If he fails to do so he is in violation of Rule 10b-5. Defendants argue that Swirsky had no duty to speak and, therefore, his failure to do so did not

11

constitute an omission under Section 10(b) and Rule 10b-5. We agree with DeLeo's analysis. "When an entire board of directors is controlled by a self-dealing director or shareholder the corporation can only be represented by the independent shareholders, to whom full disclosure must be made." Wright v. Heizer Corp., 560 F.2d 236, 249 (7th Cir. 1977). (see also Bailey, 535 F.2d 982, Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir. 1967); Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. 1968); Pappas v. Moss, 393 F.2d 865 (3d Cir. 1968); Ruckle v. Roto Am. Corp., 339 F.2d 24 (2d Cir. 1964).) We conclude that DeLeo sufficiently alleged that Swirsky had a duty to speak and disclose the "Pledge" in light of the fact that he was an interested party under the transaction by virtue of his control over nearly all parties involved (ZCanada, Beswir and Foundation). Thus, his failure to disclose the transaction could qualify as an omission under Section 10(b) and Rule 10b-5. Therefore, DeLeo adequately alleged the cause of action under the Securities Act of 1934 as against defendant Swirsky.

    b.  <u>ZCanada</u>

Defendants contend that no duty to speak existed, thereby precluding any violation of Section 10(b) and Rule 10b-5. They further claim that there is not even a tenuous duty link between ZCanada and EAI to give rise to any type of fiduciary relationship. We disagree with this analysis. Section 10(b) applies equally to both fiduciary and nonfiduciary parties to a transactions in securities. Aaron v. S.E.C., 446 U.S. 680, 694, 100 S.Ct. 1945, 1954-5 (1980); see also Central Bank of Denver v. Rifst Interstate, 511 U.S. 164, 114 S.Ct. 1439 (1994). What the Securities Act of 1934 allows is a claim for fraud or deception against anyone involved in a transaction in securities. Unlike a common law claim for breach of duty, requiring the party who breaches to be a fiduciary of the party who was wronged, the Securities Act is broader in scope.

12

DeLeo alleges that ZCanada's stock lies at the crux of the "Pledge". Furthermore, the "Pledge" benefitted ZCanada to EAI's detriment, since it is now allegedly prospering while its parent, EAI, has since been dissolved. While not determinative by itself, one party's benefit "to the exclusion of, and detriment to" another is certainly a factor in a self-dealing analysis. Sinclair Oil Corp. v. Levien, 280 A.2d 717 (Del. 1971). We conclude that the possibility of self-dealing gives rise to a Section 10(b) and Rule 10b-5 claim for deception in a transaction of securities, and that ZCanada was indeed allegedly involved in such a scheme. Therefore, we deny defendants' motion to dismiss the Securities Act of 1934 claim with respect to ZCanada.

### 2. Common Law Breach of Fiduciary Duty

Defendants maintain that they did not breach a duty owed either EAI or its individual shareholders because their actions with regards to the "Pledge" were proper under Section 607.1201 of the Florida Business Corporation Act ("FBCA"). However, DeLeo counters their argument with a standard duty of loyalty analysis, relying in part on Section 607.0831 of the FBCA. We agree with DeLeo's analysis. Once again, we will discuss each party in turn.

#### a. Swirsky

When analyzing a breach of fiduciary duty, we must first establish that the duty did indeed exist. Swirsky's duty as the director of EAI is triggered under Section 607.0831 of the FBCA:

> (1) A director is not personally liable for monetary damages to the corporation or any other person for any statement, vote, decision, or failure to act, regarding corporate management or policy, by a director, unless:
> (a) The director breached or failed to perform his or her duties as a director; and
> (b) The director's breach of, or failure to perform, those duties constitutes:
> ...
> 2. A transaction from which the director derived an improper personal benefit,

> either directly or indirectly;
>
> ...
>
> 4. In a proceeding by or in the right of the corporation to procure a judgment in its favor or by or in the right of a shareholder, conscious disregard for the best interest of the corporation, or willful misconduct;
>
> ...

FLA. STAT. ANN. § 607.0831 (West 1993).

The first part of the statute confers a duty upon a director to perform his directorial duties toward the corporation. This is the genesis of a fiduciary relationship. If the director is an interested director, he owes a duty of loyalty to the corporation. Sinclair, 280 A.2d 717. The director can breach this duty by any action enumerated under subsection (1)(b). Swirsky allegedly "derived an improper personal benefit", § 607.0831(1)(b)(2), from the "Pledge" transaction. He was also an interested director because his interests in the transaction went beyond EAI and extended to Beswir, the Foundation, and ZCanada.

The defendants argue that pursuant to Section 607.1201 of the FBCA they had no obligation to disclose the "Pledge" to EAI's shareholders. Carefully reading the language of this section, however, we conclude that it does not apply to the case at hand. Section 607.1201 states in pertinent part:

> (1) A corporation may, on the terms and conditions and for the consideration determined by the board of directors:
>
> ...
>
> (b) Mortgage, pledge, dedicate to the repayment of indebtedness (whether with or without recourse), create a security interest in, or otherwise encumber any or all of its property whether or not in the usual and regular course of business; or
>
> ...
>
> (2) Unless the articles of incorporation require it, approval by the shareholders of a transaction described in subsection (1) is not required.

FLA. STAT. ANN. § 607.1201 (West 1993).

In the present case, DeLeo alleges that Beswir never gave consideration for the "Pledge" as required by subsection (1). We determine that section 607.1201 is inapplicable to the transaction in question. Thus, we conclude that DeLeo properly alleged the common law breach of the duty of loyalty as against defendant Swirsky.

b. ZCanada

With respect to ZCanada, the existence of a duty owed EAI is not so apparent. The line of cases like Sinclair extends a duty from the parent corporation to its subsidiary, yet none reverse the flow of duty from the subsidiary to its parent. However, we find cases based upon the doctrine of double derivative actions sufficiently similar to the present cause of action to form a fiduciary relationship running from the subsidiary to the parent corporation. In Westec v. Carpenter, 434 F.2d 195 (5th Cir. 1970), the court determined that the manager of a wholly owned subsidiary owed a fiduciary duty to the shareholders of the parent corporation. The case at bar has a similar set of facts. Swirsky, as the director of ZCanada, EAI's wholly owned subsidiary, owed a duty to EAI.

Florida reiterated this duty in Garner v. Pearson, 374 F. Supp. 580 (M.D. Fla. 1973). Relying on Westec, the Garner court determined that the director or officer of a subsidiary owed a fiduciary duty to the parent corporation. We conclude that, through his position on ZCanada's board, Swirsky, and through him ZCanada, owed a fiduciary duty to EAI and its stockholders. Therefore, we deny defendants' motion to dismiss the claim based upon the FBCA with respect to defendant ZCanada.

### C. Failure to Join an Indispensable Party

Under F.R.C.P. 19, a joinder is appropriate if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." FED. R. CIV. P. 19. Defendants maintain that EAI was indispensable to this litigation and DeLeo's failure to include EAI among the defendants should result in a dismissal of this action. DeLeo, however, contends that because EAI is no longer in existence a joinder is not feasible, and it cannot be joined under Rule 19.

While it is true that in Illinois and other states if a corporation no longer exists it is "not a necessary party" Horbach v. Kaczmarek, 915 F.Supp. 18 (N.D.Ill. 1996) (see also O'Brien v. O'Brien, 238 Mass. 403, 131 N.E. 177 (1921); Weinert v. Kinkel, 296 N.Y. 151, 71 N.E.2d 445 (1947); LaHue v. Keystone Invest. Co., 6 Wash.App. 765, 496 P.2d 343 (1972).), in this case we must look to Florida law for guidance. According to the Erie doctrine, the court must apply the substantive law of the forum state and the procedural law of the state in which the incident occurred. Erie Railroad v. Tompkins, 304 U.S. 64 (1938). Under Florida law, "[a] dissolved corporation continues its corporate existence", FLA. STAT. ANN. § 607.1405(1) (West 1993), and its dissolution does not "[p]revent commencement of a proceeding by or against the corporation in its corporate name." FLA. STAT. ANN. § 607.1405(2)(e) (West 1993). It would seem that under Florida law EAI still exists for purposes including litigation.

However, in at least one instance Florida courts have held that failure to join a dissolved corporation is not a death knell to the lawsuit. In Shenkman v. Wald, 609 So.2d 686 (Fla. Dist. Ct. App. 1992), the court stated that "all of the interested parties were before the court. The corporation was doing no business and no one desired to reinstate it for that purpose. Under the circumstances, it was not necessary to reinstate the corporation and add it as a party, since all of the relevant persons were already before the court." In the present case, the relevant parties include the allegedly injured shareholders, EAI's board of directors, and any other parties involved in the alleged fraudulent transaction. It is not necessary for EAI to be joined as a party. Not only does it no longer exist, but it was insolvent at the time of its involuntary dissolution. Therefore, it is not a likely source of funds should DeLeo prevail and recover damages.

We conclude that EAI is an unnecessary party in this action, and that excluding it from the list of defendants in no way denies relief to those already parties. DeLeo's action is against EAI's Director, Swirsky, and other parties involved in the "Pledge". He is seeking nothing from EAI, nor does he allege any wrongful actions perpetrated by EAI. The defendants are also no worse off by this exclusion. DeLeo could not collect damages even if he had included EAI, and the defendants could not divide costs of this litigation among themselves and EAI because EAI is insolvent. Furthermore, Florida courts do not read Section 607.1405 so strictly as to preclude a claim for failing to join a dissolved corporation as a party. Instead, they hold that if a party has nothing to offer the litigation, and no party in the litigation will be adversely affected by exclusion, there is no need to resurrect such an obsolete entity. Therefore, we deny the defendant's motion to dismiss the claim based on failure to join EAI as an indispensable party.

II. <u>Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion to Stay This Proceeding</u>

DeLeo moves to enjoin defendant Swirsky from proceeding with a claim against EAI in Canada. Swirsky filed his suit on November 2, 2000. DeLeo alleges that Swirsky filed the Canadian lawsuit purely for the purpose of beating him to the courthouse in order to forum shop. Swirsky responds that the Canadian lawsuit is valid and, having been filed first, should take precedent. Swirsky asks that this court stay the present action until such time as the Canadian suit concludes.

A. <u>Preliminary Injunction</u>

We deny plaintiff's motion to enjoin the Canadian proceeding. We find that the Canadian Court, the Commercial List, handling this matter will allow both sides to have a full and fair opportunity to have the issue of the pledge resolved. Thus, this situation is clearly distinguishable from the Court at issue in <u>Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.</u>, 10 F.3d 425 (7th Cir. 1993).

This Court has jurisdiction over more of the disputes between the parties than does the Canadian Court. Therefore, we believe that it is in the interests of judicial economy for the Canadian Court to allow all matters relating to the dealings between these parties to be heard, in toto, by this Court. Thus, we leave this decision to the discretion of the Commercial List. If it determines to stay its proceeding, then we will adjudge all disputes before this Court.

B. <u>Motion to Stay This Proceeding</u>

While we agree with Swirsky that <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, S.Ct. 1236 (1976) controls the issue of staying a proceeding in favor of a

foreign suit, we do not stay this action because we have a duty to exercise the jurisdiction that Congress has given to us. Allendale, 10 F.3d at 430. Therefore we deny Swirsky's motion to stay and allow this proceeding to continue.

## CONCLUSION

The motions to dismiss [22-1] brought by defendants are granted in part and denied in part. The Fed. R. Civ. P. 12(b)(2), 12(b)(6) and 19 motions brought by Swirsky and ZCanada are denied. The Fed. R. Civ. P. 12(b)(2) motions brought by Beswir Properties, Inc. and the Joel Swirsky Foundation are granted. Beswir and the Joel Swirsky Foundation are dismissed from this lawsuit. Plaintiffs' motion for a preliminary injunction [16-1] is denied and defendants' motion to stay this proceeding is denied.

Wayne R. Andersen

United States District Judge

Dated: June 18, 2001