# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6917 | **DATE** | 5/13/2002 |
| **CASE TITLE** | Neal DeLeo, et al. vs. Benjamin Swirsky, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and recommendation recommending that defendant Benjamin Swirsky's motion to disqualify [104] be denied for lack of standing is hereby entered of record.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 4 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | MAY 14 2002 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | | 5/13/2002 |
| | | | date mailed notice |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



DOCKETED
MAY 1 4 2002

| | |
|---|---|
| **NEAL DELEO, PHILLIP LADUCA,** **FRED RAGLAND**, and **FRED MAY**, as Representatives of the Shareholders of EASY ACCESS INTERNATIONAL, INC., and **NEAL DELEO**, individually, <br><br>Plaintiffs, <br><br>v. <br><br>**BENJAMIN SWIRSKY** et al., <br><br>Defendants. | Case No. 00 C 6917 <br><br>Judge Wayne R. Andersen <br><br>Magistrate Judge <br>Martin C. Ashman |

## REPORT AND RECOMMENDATION

Defendant Benjamin Swirsky seeks to disqualify named plaintiff Neal DeLeo and his attorney Bruce Golden from representing the interests of the shareholders of Easy Access International, Inc. ("EAI") in this derivative suit. Swirsky contends that DeLeo and Golden have an irreconcilable conflict of interest with the shareholders of EAI that cannot be waived. DeLeo and Golden question Swirsky's standing to raise the issue of disqualification, dispute the existence of a conflict, and argue that, even if there were a conflict, the doctrine of laches should bar Swirsky from bringing his motion to disqualify so late in this derivative suit. For the following reasons, we recommend that Swirsky's Motion to Disqualify be denied due to lack of standing. On our own motion, however, we find that DeLeo should be disqualified from serving as a named plaintiff in this derivative suit and that Golden should be disqualified from serving as



counsel in this derivative suit because neither DeLeo nor Golden is able to fairly and adequately represent the interests of EAI shareholders.[1]

I.

The instant motion to disqualify concerns DeLeo's position as a plaintiff in two pending lawsuits against Swirsky relating to Zconnexx Corporation, which prior to May 1999 was a wholly owned subsidiary of EAI. One of the lawsuits is pending in New York, the other, this derivative suit, in Illinois.

DeLeo and Internet Yellow Pages Network, Inc., a corporation half-owned by DeLeo, filed the lawsuit in New York on April 18, 2000, against Zconnexx, Swirsky, and six other defendants for breach of fiduciary duty, trademark infringement, domain name theft, misappropriation of trade secrets, unfair competition, and fraud. *See DeLeo v. Zconnexx Corp.*, No. 00-CV-0319E(F), 2000 WL 1610668, at *1 (W.D.N.Y. Oct. 25, 2000). The gravamen of DeLeo and Internet Yellow's complaint is that Zconnexx stole www.yellowpage.net and other property from DeLeo and Internet Yellow in March 1999. DeLeo and Internet Yellow seek to hold Swirsky, a director of Zconnexx at the time, and some of the other defendants individually liable because they allegedly acted in concert to deprive DeLeo and Internet Yellow of their property. For relief, DeLeo and Internet Yellow seek, among other things, the imposition of a constructive trust over the property of Zconnexx, an accounting of all benefits derived from the operations of Zconnexx by the defendants, an order transferring www.yellowpage.net to DeLeo

---

[1] This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 for a report and recommendation.

and Internet Yellow, and a reasonable royalty for the unauthorized use of trade secrets. As of December 17, 2001, the New York lawsuit has been stayed, apparently because Zconnexx and one of the other defendants are in bankruptcy. (Order 12/17/01, at 1; Pls.' Mem. Pursuant Mar. 19, 2002 Order at 4.) Hence, DeLeo and Internet Yellow have not yet obtained the relief they seek in New York.

DeLeo filed this derivative suit on behalf of EAI shareholders in Illinois on November 3, 2000, against Zconnexx, Swirsky, and two other defendants for breach of fiduciary duty, fraudulent concealment, conversion, and fraud under § 10(b) of the Securities Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission. *See DeLeo v. Swirsky*, No. 00 C 6917, 2001 WL 687458, at *1 (N.D. Ill. June 19, 2001). This derivative suit involves an allegedly fraudulent transaction of securities between EAI and Swirsky in April 1999. According to DeLeo, EAI, a corporation controlled by Swirsky, pledged all of the issued and outstanding shares of Zconnexx to Beswir Properties, Inc., another corporation controlled by Swirsky, for no consideration. Shortly thereafter, Beswir informed EAI that Beswir was foreclosing on the pledge and that it would assume full rights, title, and interest to the pledged shares of Zconnexx. EAI and Zconnexx, both under the control of Swirsky, acceded to Beswir's demand, and on April 27, 1999, the three-member board of Zconnexx, which consisted of Swirsky, Swirsky's son-in-law, and Swirsky's attorney, adopted a resolution approving the transfer of the pledged shares from EAI to Beswir. Accordingly, EAI lost ownership of Zconnexx, and Zconnexx became a wholly owned subsidiary of Beswir.

In this derivative suit, DeLeo, on behalf of EAI shareholders, alleges that the pledge, the foreclosure of the pledge, and the board resolution were intentionally concealed from EAI

shareholders in violation of the law. As a matter of fact, DeLeo alleges that Swirsky never informed anyone, including the SEC, that EAI had lost its entire interest in Zconnexx, although trading in EAI's stock continued. It was not until October 2000 that DeLeo uncovered Swirsky's purported intentional concealment of this information upon receiving Swirsky's response to a discovery request in the course of the litigation in New York.

For relief in this derivative suit, DeLeo seeks money damages against Swirsky sufficient to compensate EAI for its being rendered insolvent due to Swirsky's omissions. DeLeo claims that EAI is entitled to the highest value of Zconnexx shares multiplied by the number of issued and outstanding shares at that time. (Pls.' Mem. Pursuant Mar. 19, 2002 Order at 3.) DeLeo also seeks an accounting of Swirsky and punitive damages against him. Zconnexx *was* a defendant in this derivative suit; however, on November 29, 2001, Judge Andersen entered a default judgment against Zconnexx and in favor of DeLeo and other EAI shareholders for $125,983,050.[2] Hence, Zconnexx is no longer a player in this proceeding.

Golden, who represents DeLeo and other EAI shareholders in this derivative suit against Swirsky in Illinois, also represents DeLeo and Internet Yellow against Zconnexx, Swirsky, and the other defendants in New York.

Before turning to the merits of Swirsky's Motion to Disqualify, we note that on June 19, 2001, Judge Andersen denied Swirsky and Zconnexx's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 19 for failure to join an indispensable party. Judge Andersen ruled that EAI was not an indispensable party to this derivative suit because all of the relevant parties were

---

[2] Judge Andersen arrived at this figure by taking the number of issued and outstanding Zconnexx shares (20,997,175) in March 2000 and multiplying that number by the value of the shares in March 2000 ($6.00 per share). (Order 12/20/01, at 1-2.)

- 4 -

before the court and because EAI was dissolved prior to the commencement of the suit, thereby ruling it out as a source of funds should DeLeo and other EAI shareholders prevail and recover damages. *DeLeo*, 2001 WL 687458, at *9.

## II.

Swirsky's Motion to Disqualify concentrates on the pleadings and motions filed by DeLeo in connection with the New York and Illinois lawsuits. In the New York lawsuit, where DeLeo and Internet Yellow's position is that Zconnexx, Swirsky, and the other defendants violated the law by stealing www.yellowpage.net from Internet Yellow, DeLeo has invariably stated that Internet Yellow and not Zconnexx owns www.yellowpage.net. (Riback Decl. Ex. E.) In the Illinois lawsuit, this derivative suit, where DeLeo's position is that Swirsky violated the law by failing to disclose the April 1999 pledge of Zconnexx shares, DeLeo has affirmed that Zconnexx "built a business based on the domain name www.yellowpage.net," and he has stated that www.yellowpage.net was part of the foundation of Zconnexx's business when it went public. (DeLeo Dep. at 80; Riback Decl. Ex. C ¶ 60.) Further, DeLeo has asserted that, although Zconnexx has claimed ownership of www.yellowpage.net since March 1, 1999, he is the true owner of the domain name. (Pls.' Local Rule 56.1(b)(3)(A) Statement ¶¶ 52-56.) Swirsky, in his Motion to Disqualify, argues that these statements evince that DeLeo and Golden have taken irreconcilably conflicting positions in the New York and Illinois lawsuits. The argument goes that the interests of EAI shareholders dictate that the class representative and his attorney assert that Zconnexx owns www.yellowpage.net, which is something that DeLeo and Golden will not do.

## A.

DeLeo and Golden first challenge Swirsky's standing to bring the instant motion to disqualify. DeLeo and Golden assert that only EAI, which, as mentioned, is not a party to this derivative suit, has standing to contest the adequacy of DeLeo's and Golden's representation of EAI shareholders. (Pls.' Mot. Strike Riback Decl. at 6.)

To bring a motion before the court, the moving party must establish an "'injury in fact resulting from the action which [he] seek[s] to have the court adjudicate.'" *O'Connor v. Jones*, 946 F.2d 1395, 1400 (8th Cir. 1991) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)); *Colyer v. Smith*, 50 F. Supp. 2d 966, 968 (C.D. Cal. 1999). An injury in fact generally must be sustained by the moving party himself. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). An injury in fact exists not only if the moving party shows that he is suffering harm, but also if he shows that there is a reasonable probability that he will suffer harm. *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996) (quoting *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 1995)). In addition, the moving party must show that his injury in fact is capable of being redressed by the relief that he asks the court to provide. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)); *Warth*, 422 U.S. at 498-99; *Colyer*, 50 F. Supp. 2d at 968.

Federal Rule of Civil Procedure 23.1 governs the maintenance of a shareholders' derivative suit. It provides that the "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation." Fed. R. Civ. P. 23.1. It is well

settled that the fairness and adequacy requirement of Rule 23.1 means that the named plaintiff must not have antagonistic interests that would likely cause him to conduct the derivative suit in a manner inconsistent with the interests of the shareholders; the named plaintiff owes the shareholders his undivided loyalty. *Smith v. Ayres*, 977 F.2d 946, 948-49 (5th Cir. 1992); *Owen v. Modern Diversified Indus.*, 643 F.2d 441, 443-44 (6th Cir. 1981); *Davis v. Comed, Inc.*, 619 F.2d 588, 593-95 (6th Cir. 1980); *Guenther v. Pac. Telecom, Inc.*, 123 F.R.D. 341, 345-46 (D. Or. 1987); *Fradkin v. Ernst*, 98 F.R.D. 478, 484-85 (N.D. Ohio 1983). Antagonistic interests sufficient to warrant disqualification may exist where the named plaintiff is involved in separate litigation with the defendant corporation or its directors, where the named plaintiff is a competitor of the defendant corporation, or where the named plaintiff has a personal dispute with the defendant directors. *Smith*, 977 F.2d at 949; *Guenther*, 123 F.R.D. at 345-46; *duPont v. Wyly*, 61 F.R.D. 615, 622 (D. Del. 1973). The character and nature of the conflict of interest must be examined. Purely hypothetical or remote conflicts of interest should not disqualify the named plaintiff. In this regard, it is often said that the antagonistic interest "'must go to the subject matter of the suit.'" *Recchion v. Kirby*, 637 F. Supp. 1309, 1314 (W.D. Pa. 1986) (quoting *G.A. Enters., Inc. v. Leisure Living Cmtys., Inc.*, 517 F.2d 24, 27 (1st Cir. 1975)).

The fairness and adequacy requirement also means that the named plaintiff's attorney must be qualified, experienced, and generally able to conduct the derivative suit. *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 947 (9th Cir. 1979); *Guenther*, 123 F.R.D. at 346; *Fradkin*, 98 F.R.D. at 484-85. If it becomes evident that the named plaintiff's attorney is unable to vigorously and tenaciously prosecute the interests of the shareholders, then disqualification is warranted.

The importance of having a fair and adequate named plaintiff and attorney in a derivative suit cannot be overstated. In a derivative suit, the named plaintiff assumes a position of fiduciary character, taking into his hands not his claims alone, but also those of a class of individuals who are similarly situated. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549-50 (1949). All of the shareholders depend on the named plaintiff's and his attorney's diligence, wisdom, and integrity. Though shareholders can elect a director or manager, they have no such election with regard to who represents them in a derivative suit. *Id.* And unlike a class suit, shareholders have no ability to opt out of a derivative suit. Thus, all shareholders are bound by the outcome of the derivative suit regardless of their objections. *Gottlieb v. Wiles*, 11 F.3d 1004, 1011 (10th Cir. 1993).

Against this backdrop, we turn to the issue presented—whether Swirsky, in his role as an individual defendant in this derivative action, has standing to bring a motion to disqualify DeLeo, a named plaintiff, and his attorney, Golden. The parties agree that a defendant corporation may raise the issue of disqualification. The corporation, although ordinarily positioned as a nominal defendant in a derivative suit, is realistically the true plaintiff, as any avails realized from the derivative suit belong to it and it alone. In terms of the shareholders' having fair and adequate representation, the benefit of this condition runs directly to the corporation; fair and adequate representation of the shareholders in the prosecution of a corporate claim places the corporation in a better position to recover against the alleged wrongdoer. It only makes sense, then, that the

corporation has standing to challenge the adequacy of the named plaintiff and his attorney in a derivative suit. It suffers the injury caused by unfair and inadequate representation.[3]

The interests that serve as the basis for allowing the defendant corporation to challenge the fairness and adequacy of the representation provided by the named plaintiff and his attorney in a derivative suit, however, do not provide a basis for allowing a defendant director charged with fraud to make the same challenge. Any avails realized from such a derivative suit would not belong to the director. In terms of the shareholders' having fair and adequate representation, the benefit of this condition would not run to the director, it would offer him no protection and would not increase his chances of successfully defending the derivative suit. *Cf. Markowitz v. Brody*, 90 F.R.D. 542, 561-62 (S.D.N.Y. 1981) (allowing a director to bring a motion to dismiss for failure of the named plaintiff to make demand because the demand requirement protects directors against harassment by litigious dissident shareholders who make reckless charges for personal gain). Actually, the benefit of the shareholders' having fair and adequate representation would place the director in a worse position, so to speak. The better the representation of the shareholders, the more difficult it should be for the director to obtain a decision in his favor.

This lack of any injury caused by unfair and inadequate shareholder representation establishes that defendant directors charged with fraud, like Swirsky, are unable to object to the fairness and adequacy of the named plaintiff and his attorney in a derivative suit. Therefore, Swirsky's Motion to Disqualify should be denied.[4]

---

[3] EAI, of course, has presented no motion to disqualify in this case as it has not been a participant in this case in any way. *See supra* pp. 4-5.

[4] Significantly, nowhere in Swirsky's briefs has he presented any injury. *See O'Connor*,
(continued...)

It would be perverse indeed to allow a defendant director charged with fraud, like Swirsky, to assume the contorted position of defending his actions against charges brought by a group of shareholders while simultaneously discommending their representation and requesting the court to pave the way for a more suitable foe. *See Darrow v. Southdown, Inc.*, 574 F.2d 1333, 1337 (5th Cir. 1978) (involving a defendant director who objected to a settlement agreement by reason of his being a shareholder). The fairness and adequacy requirement would be misplaced as another weapon in the director's arsenal to eliminate the derivative suit, rather than serve its true purpose as a safeguard of the interests of the shareholders. This reality militates against allowing Swirsky to challenge the fairness and adequacy of DeLeo and Golden.

Nevertheless, this Court recognizes its own duty to examine the fairness and adequacy of the representation provided by the named plaintiff and his attorney once apprised of a potential or actual conflict of interest, regardless of who brings the conflict to the attention of the court. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979); *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987); *Johnson v. Shreveport Garment Co.*, 422 F. Supp. 526, 530 (W.D. La. 1976). This duty arises out of the explicit command contained in Rule 23.1 that the derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders."[5] Fed. R. Civ. P. 23.1. Surely if evidence calls into question the ability of the self-appointed

---

[4](...continued)
946 F.2d at 1400-01.

[5] With regard to Golden, a separate basis for inquiring into an accusation of a conflict of interest is this Court's inherent power to supervise the attorneys practicing before it. *See Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 716 (7th Cir. 1977); *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan & Trust*, 155 F.R.D. 615, 618 (N.D. Ill. 1994).

named plaintiff to faithfully carry out his fiduciary role and champion the interests of absent shareholders to vindicate a corporate right, this language in Rule 23.1, coupled with notions of justice stemming from the unique nature of derivative suits, calls on the courts to act. This is especially so considering that Rule 23.1 imposes no requirement on the named plaintiff to affirmatively allege in the complaint that he is capable of fairly and adequately representing the interests of the shareholders—an important safeguard contained in Rule 23. *Compare* Fed. R. Civ. P. 23, *with* Fed. R. Civ. P. 23.1. Moreover, in light of the fact that all shareholders are bound by the outcome of the derivative suit, the recognition of this duty is of constitutional significance. *Nathan v. Rowan*, 651 F.2d 1223, 1227 (6th Cir. 1981); *Guenther*, 123 F.R.D. at 344.

### B.

In determining whether DeLeo can fairly and adequately represent the interests of EAI shareholders, we focus solely on DeLeo's ability to represent EAI shareholders against Swirsky, considering that Zconnexx is no longer a player in this proceeding. The court's duty to assess the fairness and adequacy of the named plaintiff and his attorney continues throughout all stages of the judicial proceeding. *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d at 1124; *Gomez*, 117 F.R.D. at 401. Upon entry of a decision on the merits, the court's duty ends. *See* Fed. R. Civ. P. 23(c)(1). It thus follows that the court's duty ends upon entry of a default judgment, which is also a final judgment in the case. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 n.2 (7th Cir. 1994); *Chi. Dist. Council of Carpenters Pension Fund v. Pientka*,

No. 84 C 6307, 1985 WL 2320, at *5-6 (N.D. Ill. Aug. 17, 1985). A contrary conclusion would result in unfairness to parties and place too much of a burden on the court.[6]

After careful review, we conclude that disqualification of DeLeo as a named plaintiff in this derivative suit is warranted because he has antagonistic interests that make him unfit to represent the interests of EAI shareholders. The principal source of conflict is DeLeo's interests in the lawsuit in New York. DeLeo's lawsuit in New York hinges on the merits of the assertion that Zconnexx stole www.yellowpage.net and other property from Internet Yellow in March 1999. Zconnexx was a wholly owned subsidiary of EAI at the time. Contrary to DeLeo's assertion, EAI shareholders have a clear interest in taking the position that in March 1999 they owned, through Zconnexx, www.yellowpage.net. Indeed, the success of the claims of EAI shareholders in this derivative suit may depend on it. The defendant to a Rule 10b-5 claim bears liability only for the loss that was caused by his fraudulent conduct (in this case, Swirsky's omissions). *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649-50 (7th Cir. 1997); *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683-85 (7th Cir. 1990). An award of damages in excess of that would be a windfall to the plaintiff. *Bastian*, 892 F.2d at 684-85. Furthermore, "a thief does not obtain nor can he pass title to stolen property." *First Sav. Bank of Hegewisch v. Orchowski*, No. 91 C 7083, 1994 WL 148668, at *8 (N.D. Ill. Apr. 21, 1994). "[W]here personal

---

[6] Accordingly, we make no finding as to whether disqualification is warranted because of DeLeo's varying interests in the New York and Illinois lawsuits and the financial condition of Zconnexx. We know that in *Guenther* the court disqualified a named plaintiff partly because his personal litigation was potentially worth $7.8 million, while the potential value of the derivative suit to him was only about $20. 123 F.R.D. at 345. And in *duPont*, the court disqualified the named plaintiff partly because the evidence showed that the defendant lacked resources to satisfy judgments in both the personal and derivative suits. 61 F.R.D. at 622. If there were no final judgment against Zconnexx in this derivative suit, then both of these cases would seem to apply.

property is wrongfully taken from the owner, the owner has the right to retake possession whenever and wherever the property may be found." *Douglass v. Wones*, 458 N.E.2d 514, 519 (Ill. App. Ct. 1983). If EAI's insolvency or Zconnexx's success can be traced to the possession of stolen assets, then EAI shareholders may be unable to recover the full amount of damages they seek from Swirsky for that reason alone. As long as DeLeo is a named plaintiff in this derivative suit, EAI shareholders are exposed to this potentially unfavorable outcome, and they are not in a position to take a position to protect themselves from it.

The risk of this unfavorable outcome occurring is very real. Presently, Swirsky is using DeLeo's assertions of www.yellowpage.net ownership against EAI shareholders in this derivative suit in the form of an estoppel argument on summary judgment. Swirsky claims that EAI shareholders are not entitled to recover the highest value of Zconnexx shares since DeLeo, on behalf of EAI shareholders, admitted that Zconnexx's value derived from assets stolen from Internet Yellow in March 1999—one month prior to the pledge. Swirsky says: "The courts are not in the business of helping thieves to recover loot that is stolen from them." (Swirsky's Reply Mem. Supp. Cross-Mot. Summ. J. at 12.) Without making a finding on the merits of this argument, we note that EAI shareholders are not in a position to respond to Swirsky's claim of estoppel with DeLeo as a named plaintiff.

Potential conflicts exist as well with DeLeo as a named plaintiff in this derivative suit. DeLeo is a fifty percent shareholder of Internet Yellow. He owns 13,507 shares of EAI with options for another 64,000 shares. The total number of EAI shares issued and outstanding is approximately 9.75 million. (Swirsky's Mem. Supp. Mot. Disqualify at 2.) In the New York lawsuit, DeLeo has set his sights on www.yellowpage.net as well as any profits derived by

Zconnexx, Swirsky, and the others through the use of that domain name and other property. In this derivative suit, DeLeo, on behalf of EAI shareholders, seeks to recover essentially the same prize, albeit in the form of the highest price of Zconnexx shares rather than the profits realized through the use of www.yellowpage.net and other property. DeLeo's stake in the New York lawsuit compared to his stake in this derivative suit, coupled with the timing of the two lawsuits (New York first, then Illinois) suggests that DeLeo may use this derivative suit as leverage in the New York lawsuit. *See G.A. Enters., Inc.*, 517 F.2d at 26-27; *Owen*, 643 F.2d at 443; *Guenther*, 123 F.R.D. at 345-46. Additionally, given DeLeo's greater stake in the New York lawsuit, his position as a competitor of EAI by virtue of his ownership of Internet Yellow, and his legal position in the New York lawsuit, which has found its way into this derivative suit, and which is now having an adverse effect on this derivative suit for EAI shareholders, we recognize the likelihood that DeLeo has made other tactical and strategic decisions in this derivative suit not to further the interests of EAI shareholders in this derivative suit but to protect his own interests in the New York lawsuit. *See G.A. Enters.*, 517 F.2d at 26; *Recchion*, 637 F. Supp. at 1315; *duPont*, 61 F.R.D. at 622. Lastly, we cannot overlook DeLeo's vindictiveness toward Swirsky. These two individuals have a history of involvement in the same abstruse web of businesses. The pattern, it appears, is that DeLeo ends up with the short end of the stick. EAI provided DeLeo with stock options to compensate him for his time and effort in developing EAI (whatever that entailed), but, according to DeLeo, Swirsky caused these stock options to become worthless by pilfering the assets of EAI for himself. (Pls.' Fourth Am. Compl. ¶¶ 69-79.) DeLeo dreamed of becoming the president of a publicly traded corporation based on www.yellowpage.net (Riback Decl. Ex. F at 5), but, according to DeLeo, Swirsky was an active participant in

shattering this dream and stealing the success of www.yellowpage.net for himself. (*Id.* Ex. E ¶¶ 30-59.) Plainly, there is a battle taking place in Illinois and New York with DeLeo on one side and Swirsky on the other. It is likely that objectives unrelated to the interests of EAI shareholders may be fueling the maintenance of this derivative suit. *See Davis*, 619 F.2d at 597; *Recchion*, 637 F. Supp. at 1315.

In sum, the facts and circumstances before us, considered as a whole, indicate that DeLeo cannot fairly and adequately represent the interests of EAI shareholders in this derivative suit. DeLeo's interest in proving that Zconnexx stole www.yellowpage.net from Internet Yellow in March 1999, which is being advanced by DeLeo in both the New York lawsuit and this derivative suit in Illinois, is inimical to the interests of EAI shareholders. In addition, DeLeo's economic interests in the New York lawsuit and his vindictiveness toward Swirsky create an inherent danger that DeLeo will use this derivative suit to carry out objectives not in the interests of EAI shareholders. EAI shareholders deserve a representative with synonymous interests. *See duPont*, 61 F.R.D. at 623-24. DeLeo does not fit this description.

Because additional plaintiffs have been named in this derivative suit, we find that dismissal of the derivative action itself is unwarranted based on the disqualification of DeLeo. *See Guenther*, 123 F.R.D. at 346. Nothing before us indicates that the other named plaintiffs have antagonistic interests like that of DeLeo.

### C.

The disqualification of DeLeo necessitates the disqualification of Golden, who represents DeLeo in both the New York and Illinois lawsuits. As previously mentioned, an attorney who

represents a class of shareholders must be able to vigorously and tenaciously prosecute the interests of the shareholders. *See supra* p. 7. Although no one could dispute that Golden has, overall, pursued the defendants in this derivative suit with the highest degree of tenacity and vigor, it is equally evident that DeLeo's interests hinder Golden's ability to fully prosecute the interests of EAI shareholders. We have indicated that EAI shareholders have an interest in taking the position that Zconnexx owned www.yellowpage.net and other property in March 1999. Yet Golden cannot advance this position, not as a tactical or strategic choice made in furtherance of the interests of EAI shareholders but as a direct consequence of a conflict caused by his representation of DeLeo in the New York lawsuit. Because of this, we are reluctantly compelled to exercise our discretion in favor of disqualifying Golden as long as he represents DeLeo in the New York lawsuit.

Golden's conclusory statement suggesting that the issue of disqualification is moot because there are named plaintiffs other than DeLeo in this derivative suit is dismissed. (Pls.' Mot. Strike Riback Decl. at 6.) Golden offers no evidence that he even disclosed his conflict to them, much less that he disclosed his conflict to all EAI shareholders, as he would be required to do. Regardless, as the *Guenther* court pointed out: "Even if counsel could accomplish the formidable task of notifying all similarly situated shareholders and receiv[ing] [their] consent [to the conflict], that . . . would not relieve [the court] of its obligation under [Federal Rule of Civil Procedure] 23.1 to determine the adequacy of representation." 123 F.R.D. at 347.

We also dismiss Golden's argument that he should not be disqualified out of consideration of the time and effort he has expended in this derivative suit. There is no question that Golden has expended a vast amount of time and effort in this derivative suit. But, Golden

was in the best position to avoid this quandary in the first place. He assumed the risk of disqualification by agreeing to serve as counsel in the New York and Illinois lawsuits. Obviously he was aware of the risk at the time he filed this derivative suit, as the allegations in this derivative suit have been carefully crafted so as to avoid jeopardizing DeLeo's interests in the New York lawsuit. Moreover, we are obliged to look out for the interests of EAI shareholders throughout this derivative suit. At no point should the time and effort expended by an advocate who is fettered by a conflict bear on the decision to disqualify. *See Guenther*, 123 F.R.D. at 348.

### III.

For the reasons stated, we recommend that Swirsky's Motion to Disqualify be denied for lack of standing. On our own motion, however, we find that DeLeo should be disqualified from serving as a named plaintiff in this derivative suit and that Golden should be disqualified from serving as counsel in this derivative suit—as long as he represents DeLeo in the New York lawsuit—because neither DeLeo nor Golden is able to fairly and adequately represent the interests of EAI shareholders. Because additional plaintiffs have been named in this derivative suit, we find that dismissal of the derivative action itself is unwarranted. The remaining named plaintiffs should be advised to secure new counsel within a reasonable period of time.

Dated: May 13, 2002.

                                     MARTIN C. ASHMAN
                                     United States Magistrate Judge

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Wayne R. Andersen within ten (10) days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

| | |
|---|---|
| BRUCE P. GOLDEN, Esq.<br>Bruce P. Golden & Associates<br>4137 North Hermitage Avenue<br>Chicago, IL 60613 | STUART M. RIBACK, Esq.<br>MATTHEW F. SCHWARTZ, Esq.<br>Siller Wilk, L.L.P.<br>747 Third Avenue<br>New York, NY 10017 |
| | STEPHEN J. SENDEROWITZ, Esq.<br>AUGUST H. SCHUPP, Esq.<br>Schwartz, Cooper, Greenberger<br>  and Krauss, Chtd.<br>180 North LaSalle Street<br>Suite 2700<br>Chicago, IL 60601 |
| Attorney for Plaintiffs | Attorneys for Defendants |